WEIL, GOTSHAL & MANGES LLP
Christopher J. Cox
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Jacqueline Marcus
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br><br>                                                    Debtor. | Chapter 11 Case<br>No. 08-13105 (SCC)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC., IN ITS CAPACITY AS PLAN ADMINISTRATOR ON BEHALF OF LEHMAN BROTHERS SPECIAL FINANCING INC.<br><br>                                                    Plaintiff,<br><br>v.<br><br>UNIPOL BANCA S.p.A., and<br>UNIPOL ASSICURAZIONI S.p.A<br><br>                                                    Defendants. | Adv. Proc.<br>No. 14-01021 (SCC)<br><br>**FIRST AMENDED ADVERSARY COMPLAINT REGARDING ANTHRACITE 22** |

Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as Plan Administrator (the

"Plan Administrator" or "Plaintiff") on behalf of Lehman Brothers Special Financing Inc.

("LBSF") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), by its undersigned attorneys, alleges the following against Defendants, Unipol Banca S.p.A. ("Unipol") and UnipolSai Assicurazioni S.p.A. ("UnipolSai") (together, the "Unipol Entities" or "Defendants").

## I. PRELIMINARY STATEMENT

1.  Plaintiff brings this action against the Unipol Entities to recover funds received from Anthracite Investments (Ireland) plc. ("Anthracite"), which should have been paid to LBSF.

2.  Anthracite issued the Anthracite 22 Notes[1] in connection with an inflation linked convexity swap transaction between Anthracite and LBSF (the "Swap Transaction"). On information and belief, Unipol and/or UnipolSai purchased the Anthracite 22 Notes and are the sole beneficial holders. Shortly after LBSF's chapter 11 filing, Anthracite elected to terminate the Swap Transaction. Pursuant to the ISDA Master Agreement between LBSF and Anthracite, upon such termination, LBSF was to receive an early termination payment of approximately €5,414,582 ("Early Termination Payment") as a result of being in-the-money on the Swap Transaction as of the designated early termination date ("Early Termination Date"). Instead of paying the full Early Termination Payment to LBSF, however, following the liquidation of its underlying assets, Anthracite distributed substantially all of the proceeds to the Unipol Entities, which improperly received and retained certain amounts that should have been paid to LBSF.[2]

3.  In direct contravention of the clear terms of the ISDA Master Agreement, which required a specific methodology to be employed when calculating the amounts due to either party in the event that the Swap Transaction was terminated, Anthracite, through its agent,

---

[1] Capitalized terms used in this introduction but not defined have the meanings assigned below.

[2] LBSF seeks only to recover the portion of the amount that the Unipol Entities received unlawfully and at the expense of LBSF's estate.

miscalculated the Early Termination Payment owed to LBSF. Rather than receiving €5,414,582, which represents the full Early Termination Payment that was owed to it as of the Early Termination Date, LBSF received only €1,647,697. The difference – €3,766,885– (the "LBSF Receivable") was improperly paid to and retained by the Unipol Entities.

    4.    For the reasons outlined below, the Defendants are liable for the LBSF Receivable. Plaintiff, therefore, commences this action for the benefit of LBSF's estate to obtain an order (i) declaring that the Unipol Entities have been unjustly enriched and requiring the Unipol Entities to pay to LBSF the LBSF Receivable; (ii) declaring that the Unipol Entities received and retained LBSF's property and requiring the Unipol Entities to pay to LBSF such property; (iii) declaring that the Unipol Entities' possession of the LBSF Receivable directly interfered with LBSF's right of possession and the Unipol Entities wrongfully deprived LBSF of the use of, and its property interest in, the LBSF Receivable; (iv) compelling and directing the Unipol Entities to turn over the LBSF Receivable, pursuant to section 542(a) of the Bankruptcy Code because it constitutes property of LBSF's bankruptcy estate under section 541(a) of the Bankruptcy Code; and (v) declaring that the Unipol Entities have violated the automatic stay extant under section 362 of the Bankruptcy Code by withholding amounts payable to LBSF, and awarding damages and such other and further relief as the Court may deem proper arising from the Unipol Entities' unlawful retention of property of LBSF's estate.

## II. PARTIES

    5.    LBHI is a corporation organized and incorporated under the laws of the state of Delaware, with its principal business address at 1271 Sixth Avenue, New York, New York 10020.

    6.    Plaintiff LBSF is a Delaware corporation with its principal business address at 1271 Avenue of the Americas, 46th Floor, New York, NY 10020.

3

7. On September 15, 2008, LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 3, 2008, LBSF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. On December 6, 2011, the Court approved and entered an order confirming the Plan. The Plan became effective on March 6, 2012. Pursuant to the Plan, LBHI, as Plan Administrator, is authorized to prosecute actions on behalf of the estate of LBSF.

9. Upon information and belief, Unipol is a bank, with its principal office located in Bologna, Italy.

10. Upon information and belief, UnipolSai is a financial services company with its principal place of business in Bologna, Italy.

### III. JURISDICTION AND VENUE

11. This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as well as sections 105, 362, 541, and 542 of the Bankruptcy Code, to recover amounts due to LBSF by the Unipol Entities and for declaratory relief for violation of the automatic stay and other provisions of the Bankruptcy Code.

12. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding constitutes a "core proceeding" under 28 U.S.C. § 157(b).

13. Venue is proper in this Court under 28 U.S.C. § 1409(a), because the chapter 11 cases of LBHI and LBSF are pending in this district.

14. Personal jurisdiction is proper over Unipol and UnipolSai pursuant to Bankruptcy Rule 7004(f).

4

## IV. FACTUAL ALLEGATIONS

### A. The Anthracite 22 Transaction

15. LBSF transacted with Anthracite under the terms of a standard form 1992 Multicurrency-Cross Border ISDA Master Agreement, dated November 3, 2003 (the "ISDA Master Agreement"), which is governed by English law. The ISDA Master Agreement, together with other supporting documents, allowed the parties to enter into various transactions, including the Swap Transaction, relating to Anthracite's August 14, 2008 issuance to Unipol and/or UnipolSai of the Series 22 €50,000,000 Secured Inflation-Linked Convexity Notes with a maturity date of February 4, 2020 (the "Anthracite 22 Notes").

16. The Anthracite 22 Notes were secured by a charge on €50,000,000 in principal amount of Buoni del Tesoro Poliennali 4.50% notes that were owned by Anthracite and issued by the Republic of Italy (the "Collateral"). The Collateral was secured under the Supplemental Trust Deed in respect of the Anthracite 22 Notes and the Swap Transaction, dated June 29, 2006, among Anthracite as issuer, LBSF, the trustee, HSBC Bank Plc, serving as both the "Issuing and Paying Agent" and the "Custodian," and HSBC International Trust Services (Ireland) Limited, solely in its capacity as the "Irish Paying Agent" (the "Supplemental Trust Deed").

### B. Termination of the Prepetition Transaction and Erroneous Calculation of the Early Termination Payment

17. On December 2, 2008, Anthracite opted to terminate the Swap Transaction based upon an event of default that occurred as a result of LBSF's chapter 11 filing. Section 6(e) of the ISDA Master Agreement provides that the payment owed upon an early termination will be calculated based upon the "Second Method" and "Loss" measure.

18. "Loss" is defined, in relevant part, as:

> . . . an amount that a party reasonably determines in good faith to be its total losses and costs . . . in connection with this Agreement . . . including any loss of bargain, cost of funding . . . loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position (or any gain resulting from any of them). . . . A party will determine its Loss as of the relevant Early Termination Date . . . . A party may (but need not) determine Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets.

ISDA Master Agreement at § 14.

19. In a statement of amounts owed following the Early Termination Date (the "Calculation Statement"), LBSF was notified that it would be paid €1,647,697, inclusive of unpaid amounts owed by either party to the ISDA Master Agreement and accrued interest. However, as of the relevant Early Termination Date, LBSF was owed substantially more as a result of its in-the-money position on the Swap Transaction. Specifically, under a proper application of Loss, LBSF was due a total of €5,414,582. Payment in full was due to LBSF on the day the Calculation Statement was delivered; however, the LBSF Receivable was paid to the Unipol Entities and, to date, LBSF is still owed the LBSF Receivable, plus interest.

20. The Unipol Entities are the wrongful recipients of the LBSF Receivable and have continued to improperly retain the amount of the LBSF Receivable. The Unipol Entities' receipt and retention of the LBSF Receivable violates the Bankruptcy Code and the laws of the State of New York.

## COUNT I
### (Unjust Enrichment)

21. The Plan Administrator repeats and realleges each and every allegation set forth in the preceding paragraphs 1-20 with the same force and effect as if hereinafter fully set forth at length.

6

22. Even though LBSF's position under the ISDA Master Agreement was in-the-money for more than €5,414,582 as of the Early Termination Date, because of the misapplication of the Loss measure LBSF's valuable position under the ISDA Master Agreement was eradicated and substantially all of the Collateral provided by Anthracite to secure its obligations to LBSF under the ISDA Master Agreement was distributed to the Unipol Entities.

23. The Unipol Entities have been enriched at the expense of LBSF because the Unipol Entities received and retained the LBSF Receivable, which should have been distributed to LBSF in satisfaction of its Early Termination Payment. The Unipol Entities received a windfall at LBSF's expense even though LBSF contracted with Anthracite to ensure that it would receive a certain value if its position under the Swap Transaction was in-the-money. Equity and good conscience require the Unipol Entities to return the LBSF Receivable to LBSF because it was property wrongfully transferred.

## COUNT II
### (Money Had and Received)

24. The Plan Administrator repeats and realleges each and every allegation set forth in the preceding paragraphs 1-23 with the same force and effect as if hereinafter fully set forth at length.

25. The Unipol Entities have been enriched at the expense of LBSF because the Unipol Entities received the Collateral which included amounts that should have been allocated to the LBSF Receivable. This occurred even though LBSF's position under the ISDA Master Agreement was in-the-money with a market value of approximately €5,414,582. Thus, LBSF had a substantial interest in that portion of the Collateral equal to the LBSF Receivable. Equity and good conscience require the Unipol Entities to pay to LBSF the LBSF Receivable.

US_ACTIVE:\44462708\3\58399.0011

26. The Unipol Entities have no right to retain the amounts that should have been paid to LBSF, and have received the benefit of using LBSF's property since the distribution. As such, the Unipol Entities should be required to pay to LBSF the amount that should have been paid to LBSF in the first instance, plus interest.

## COUNT III
### (Conversion)

27. The Plan Administrator repeats and realleges each and every allegation set forth in the preceding paragraphs 1-26 with the same force and effect as if hereinafter fully set forth at length.

28. At the time Anthracite elected to terminate the Swap Transaction, LBSF was entitled to receive a substantial Early Termination Payment from Anthracite under the Loss measure for calculating the settlement amount owed under the ISDA Master Agreement. Instead of properly valuing the Early Termination Payment as of the Early Termination Date and transmitting to LBSF payment of the entire Early Termination Payment, including the LBSF Receivable, a significantly lower amount was improperly transmitted to LBSF, and the LBSF Receivable was paid to the Unipol Entities.

29. Upon information and belief, the Unipol Entities knew or should have known that that they were recipients of monies owed to LBSF.

30. The Unipol Entities' possession of the LBSF Receivable directly interfered with LBSF's ability to possess it. Thus, the Unipol Entities wrongfully deprived LBSF of the use of, and its property interest in, the LBSF Receivable.

31. As a result of the Unipol Entities' retention of the LBSF Receivable, LBSF has been damaged in an amount to be proven at trial, but no less than €3,766,885, an amount representing the full value of the LBSF Receivable, plus prejudgment interest.

## COUNT IV
## (Turnover of the LBSF Receivable Pursuant to Section 542(a) of the Bankruptcy Code)

32. The Plan Administrator repeats and realleges each and every allegation set forth in the preceding paragraphs 1-31 with the same force and effect as if hereinafter fully set forth at length.

33. Section 542(a) of the Bankruptcy Code provides, in pertinent part, that ". . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

34. LBSF's interest in the LBSF Receivable constitutes property of LBSF's estate under section 541(a) of the Bankruptcy Code, and LBSF would have been able to use, sell or lease such property under section 363 of the Bankruptcy Code but for the Unipol Entities' improper receipt and retention of the LBSF Receivable.

35. Prior to the transfer of the LBSF Receivable to the Unipol Entities, Anthracite and the Unipol Entities, upon information and belief, possessed actual knowledge of the commencement of LBSF's chapter 11 case.

36. Nevertheless, the LBSF Receivable, which represents a substantial portion of the total Early Termination Payment owed to LBSF, was paid to, and has been retained by, the Unipol Entities. The value of the LBSF Receivable is an amount that is not inconsequential and is of substantial value to the estate.

US_ACTIVE:\44462708\3\58399.0011

37. Accordingly, pursuant to section 542(a) of the Bankruptcy Code, Plaintiff requests an order compelling and directing the Unipol Entities to turn over to LBSF the LBSF Receivable, which amounts to €3,766,885 in principal, plus prejudgment interest.

### COUNT V
### (Declaratory Judgment that the Unipol Entities Violated the Automatic Stay and an Order Requiring Turnover of the LBSF Receivable and Accrued Interest Thereon)

38. LBSF repeats and realleges each and every allegation set forth in the preceding paragraphs 1-37 with the same force and effect as if hereinafter fully set forth at length.

39. Pursuant to section 362(a)(3) of the Bankruptcy Code, the filing of a voluntary case under chapter 11 of the Bankruptcy Code operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" absent an order of the bankruptcy court granting relief from the stay.  11 U.S.C. § 362(a)(3).

40. Under section 105(a) of the Bankruptcy Code, this Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under this section, this Court may grant damages to punish violations of the automatic stay.

41. The LBSF Receivable constitutes property of LBSF's estate and the Unipol Entities' retention of the LBSF Receivable, therefore, constitutes an impermissible "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

42. Accordingly, LBSF is entitled to (1) a declaratory judgment that the Unipol Entities acted in express violation of section 362 of the Bankruptcy Code; and (2) pursuant to section 105(a) of the Bankruptcy Code, an award of monetary damages, in an

10

amount to be determined at trial and including (but not limited to) LBSF's actual damages, costs, and attorneys' fees and expenses, on account of the Unipol Entities' knowing and willful violation of the automatic stay.

## **PRAYER FOR RELIEF**

WHEREFORE the Plan Administrator respectfully requests that the Court grant the following relief:[3]

    A.    Damages in an amount to be proven at trial;

    B.    An order stating that the Unipol Entities have been unjustly enriched and requiring the Unipol Entities to pay to LBSF the LBSF Receivable;

    C.    An order stating that the Unipol Entities had and received LBSF's property and requiring the Unipol Entities to pay to LBSF the LBSF Receivable;

    D.    An order stating that the Unipol Entities' possession of the LBSF Receivable directly interfered with LBSF's ability to possess it, and the Unipol Entities wrongfully deprived LBSF of the use of, and its property interest in, the LBSF Receivable;

    E.    An order compelling and directing the Unipol Entities to turn over to LBSF the LBSF Receivable, pursuant to section 542(a) of the Bankruptcy Code because it constitutes property of LBSF's bankruptcy estate under section 541(a) of the Bankruptcy Code;

    F.    A declaration that the Unipol Entities have violated the automatic stay extant under section 362 of the Bankruptcy Code by withholding amounts payable to LBSF;

    G.    Pre-judgment and post-judgment interest on all monetary damages; and

---

[3] LBSF reserves the right to amend the complaint to state additional causes of action.

    H. Such other relief as the Court deems just and proper, including costs and attorneys' fees.

Dated: Redwood Shores, California
   May 28, 2014

            <u>/s/ Christopher J. Cox</u>
            Christopher J. Cox
            WEIL, GOTSHAL & MANGES LLP
            201 Redwood Shores Parkway
            Redwood Shores, CA 94065
            Telephone: (650) 802-3000
            Facsimile: (650) 802-3100

            Jacqueline Marcus
            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York 10153
            Telephone: (212) 310-8000
            Facsimile: (212) 310-8007

            *Attorneys for Lehman Brothers Holdings Inc.*
            *and Lehman Brothers Special Financing Inc.*